[745 NYS2d 522]

In the Matter of DISTRICT No. 1-PCD et al., Appellants, v APEX MARINE SHIP MANAGEMENT COMPANY, L.L.C., et al., Respondents.

First Department, July 2, 2002

## APPEARANCES OF COUNSEL

*J. Mac Morgan* of counsel (*Jacob Shisha* on the brief; *Tabak & Mellusi,* attorneys), for appellants.

*Nicholas P. Giuliano* of counsel (*Waesche, Sheinbaum & O'Regan, PC,* attorneys), for respondents.

## OPINION OF THE COURT

ROSENBERGER, J.

Petitioner, District No. 1-PCD, Marine Engineers' Beneficial Association (AFL-CIO) (the Union), is a "labor organization" within the meaning of section 301 of the Federal Labor Management Relations Act of 1947 ([LMRA] 29 USC § 185). The Union represents licensed marine engineers who work on board United States flag, oceangoing merchant vessels. Petitioner Harry A. Kirmon is a member of the Union who was fired from his job as permanent first assistant engineer on the *M/V Cape Taylor* by respondent Apex Marine Ship Management Company, L.L.C., which operated the *Cape Taylor* at the time of Kirmon's discharge. Respondent Mormac Marine Transport, Inc., took over the operation of the *Cape Taylor* from Apex in November 2000. Apex and Mormac (collectively, the Company) are both parties to a collective bargaining agreement (CBA) with the Union that was in effect during the events in question.

The collective bargaining agreement provides that any action to modify or vacate an arbitration award shall be instituted in the courts of New York State. However, because the present dispute involves a contract between a labor organization and an employer within the meaning of section 301 of the LMRA, the law to be applied is the federal common law developed pursuant to the LMRA (*Textile Workers Union of Am. v Lincoln Mills of Ala.,* 353 US 448, 456; *see also, Local 174, Teamsters Chauffeurs, Warehousemen & Helpers of Am. v Lucas Flour Co.,* 369 US 95).

The present proceeding arises out of an arbitrator's dismissal of the Union's grievance challenging the Company's discharge

of Kirmon. The arbitrator dismissed the grievance on the ground that the Union had failed to comply with a procedural prerequisite to arbitration. The Union commenced a proceeding to vacate the dismissal award. Supreme Court, noting the limited role that the judiciary has under federal law in the review of arbitration awards issued pursuant to collective bargaining agreements, held that it had no basis to vacate the award and denied the petition.

The collective bargaining agreement's procedure for discharge grievances is as follows: On the date of the discharge, the Company is to provide a "written statement advising of the discharge and an explanation of the reasons for the discharge." (CBA § 4 [b].) If the Union determines that it is going to file a grievance, it must provide the Company with at least five days' written notice, setting forth the nature of the grievance and the relief requested unless the time limitation is waived. (CBA § 2 [e].) The grievance is first presented to a "Licensed Personnel Board" (LPB), which consists of two persons appointed by the Union and two persons appointed by the Company. (CBA § 2 [b].) The grievance can be finally resolved by the LPB by majority vote or mutual agreement. (CBA § 2 [b].) "In the absence of such final disposition by the [LPB], the Arbitrator will then have jurisdiction of the case to render a decision as Arbitrator." (CBA § 2 [b].) Section 4 (a) of the CBA expressly limits the arbitrator's jurisdiction in discharge grievances, providing that, in such cases,

> "the Arbitrator shall have authority to reach only one of two decisions. He may either uphold the discharge if he finds that it was made for just or proper cause, or he may direct the Company to reinstate the licensed engineer with full base wages, nonwatch, subsistence and room allowance for the period he was off the vessel." (CBA § 4 [a].)

Section 2 (a) of the CBA provides an additional caveat for discharge and disciplinary grievances, requiring a discharged employee to provide the *Union* with a written statement of his claim within 15 days of the discharge:

> "[n]o grievance or claim arising from an unjust discharge or other disciplinary action will be entertained after pay-off unless within fifteen (15) days thereafter a written claim from the licensed engineer or someone authorized to act on his behalf is received by the Union, unless there are mitigating

or extenuating circumstances which prevented the licensed engineer or his representative from submitting the claim."

The relevant facts are relatively straightforward. On May 10, 2000, the Company discharged Kirmon and provided him with a written statement of the reasons for the discharge as required by section 4 (b) of the collective bargaining agreement. On May 11, 2000, in conformance with the notice requirements of section 2 (e) of the collective bargaining agreement, the Union sent a letter to the Company, notifying it of the Union's intent to pursue a grievance on Kirmon's behalf. On May 17, 2000, seven days after his discharge and well within the 15-day limitation imposed by section 2 (a), Kirmon sent an 8½-page "Response to the Letter of Termination" to the Union. The dispute was properly submitted to the LPB for initial determination pursuant to section 2 (b) of the collective bargaining agreement. The LPB deadlocked, and the grievance was then submitted to the arbitrator pursuant to sections 2 (b) and 4 (a) of the CBA.

As part of prehearing discovery, the Company demanded that the Union provide a copy of Kirmon's section 2 (a) statement, which the Union refused to turn over. At the inception of the grievance hearing, the Company moved to dismiss the grievance on the ground that the Union failed to comply with section 2 (a) of the CBA when it failed to turn over Kirmon's statement. The Union opposed the motion, arguing that all notice requirements under the collective bargaining agreement were satisfied by the Union's May 11th letter to the Company, that neither Kirmon nor the Union had any obligation to provide the Company with Kirmon's statement, and that the statement was privileged.[1] The arbitrator reserved decision on the Company's motion but ordered the Union to provide the Company with a copy of Kirmon's statement, which the Union did, over objection.

The arbitrator issued his decision and award three months later. The award dismissed the grievance on the ground that the section 2 (a) "written claim" requirement, which the arbitrator characterized as a jurisdictional "precondition" to the arbitration, had not been met. Because the award did not

---

1. The arbitrator's decision included a finding that the Union denied the existence of a "written claim" from Kirmon. The Union disputed that finding in its submission to Supreme Court, and the Company cited only the arbitrator's decision in support of this "fact." There appears to be nothing in the record to support such a finding.

draw its essence from the collective bargaining agreement and because the arbitrator exceeded the specific and limited authority conferred on him by the collective bargaining agreement, the judgment should be reversed.

More than 40 years ago, in three cases that came to be referred to as the *"Steelworkers Trilogy,"* the Supreme Court of the United States confirmed the central role that arbitration plays in the resolution of labor disputes. The Court explained that an agreement to submit labor disputes to arbitration was "the substitute for industrial strife" (*United Steelworkers of Am. v Warrior & Gulf Nav. Co.*, 363 US 574, 578 [1960]), and that the "grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self government" (*id.* at 581). While noting the limited role courts were to have in reviewing arbitration awards (*see, id.* at 582; *United Steelworkers of Am. v Enterprise Wheel & Car Corp.*, 363 US 593, 596 [1960]; *United Steelworkers of Am. v American Mfg. Co.*, 363 US 564, 567-568 [1960]), the Court admonished that "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. * * * [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (*Enterprise Wheel & Car Corp.*, 363 US at 597.)

The obligation to arbitrate in the collective bargaining context thus arises solely from the collective bargaining agreement between the Union and the employer. Because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" (*Warrior & Gulf Nav. Co.*, 363 US at 582), it is left to the courts to determine whether the agreement vests the arbitrator with the authority to make the award in question (*id.; see also, Torrington Co. v Metal Prods. Workers Union Local 1645, UAW, AFL-CIO*, 362 F2d 677, 680 n 5 [2d Cir 1966]).

■ The award in the present case did not "draw its essence" from the collective bargaining agreement. As an initial matter, the arbitrator's determination that section 2 (a)'s written-claim requirement had not been satisfied is contradicted by his explicit finding that "Kirmon provided a detailed statement of his responses to the charges to the Union on May 17." Furthermore,

the arbitrator's ruling that the Company was entitled to receive a copy of Kirmon's statement finds absolutely no support in the collective bargaining agreement. Section 2(a) requires only that the discharged employee provide the *Union* with a "written claim" within 15 days after the discharge, which the arbitrator acknowledged Kirmon did. There is nothing in the CBA that required the Union, or Kirmon, to provide Kirmon's statement to the Company.

The Union explained, without contradiction, that it had negotiated for the inclusion of section 2 (a) in the CBA in order to ensure that its members would provide it with full, detailed and honest descriptions of their versions of the facts leading to discharges without fear that what they said could be used against them by the Company. In addition to giving the member the chance to give his explanation, section 2 (a) establishes a mechanism to ensure that the Union is provided with all the information it needs to assess the merits of a claim and determine whether to file a grievance. As the exclusive bargaining representative of the employees and as one of the two parties to the collective bargaining agreement, it is the Union that "owns" the grievance (essentially an allegation that the employer breached the agreement), and it is generally only the Union that has the discretion—within the bounds of its duty of fair representation—to pursue or not to pursue a particular grievance (*Vaca v Sipes*, 386 US 171, 184, 191-192; *Black-Clawson Co., Paper Mach. Div. v International Assn. of Machinists Lodge 355, Dist. 137*, 313 F2d 179, 185 [2d Cir]; *see also, CBS, Inc. v Snyder*, 989 F2d 89 [2d Cir]; *Harris v Chemical Leaman Tank Lines, Inc.*, 437 F2d 167, 170 [5th Cir]). Section 2 (a) thus served an important collective bargaining purpose, and, given both its terms and its purpose, the Union was justified in refusing to accede to the Company's demand that Kirmon's statement be turned over in discovery.[2] The arbitrator had no basis under the collective bargaining agree-

---

2. In fact, the arbitrator's insistence that the Union turn over Kirmon's statement to the Company during the course of the grievance hearing may have breached the confidentiality protections that have been recognized as attaching to communications between a union member and the union with respect to representation matters (*see, e.g., Matter of City of Newburgh v Newman*, 70 AD2d 362; *United States Dept. of Justice v Federal Labor Relations Auth.*, 39 F3d 361 [DC Cir]; *Matter of Seelig v Shepard*, 152 Misc 2d 699). Such protections would be particularly appropriate for the Kirmon statement in view of the Union's explanation of the underlying purposes of section 2 (a).

ment to premise a dismissal of the grievance on that refusal.[3] The arbitration award thus failed to draw its essence from the agreement.

■ In addition, section 4 (a) of the CBA specifically limits the arbitrator's authority in discharge grievances to either (a) uphold the discharge upon a finding that it was made for just cause or (b) direct the Company to reinstate the employee with full backpay and benefits. Nothing in the CBA permits the arbitrator to decide a discharge grievance on the basis of whether the parties complied with the agreement's procedural rules or to dismiss a discharge grievance on procedural grounds.

Supreme Court, relying on *John Wiley & Sons, Inc. v Livingston* (376 US 543, 552), *Matter of Long Is. Lbr. Co. (Martin)* (15 NY2d 380, 383), and *Denhardt v Trailways, Inc.* (767 F2d 687, 689 [10th Cir]), mistakenly viewed this case as involving questions of procedural arbitrability, which, under broad arbitration clauses or in the absence of an express limitation on the arbitrator's authority, are generally matters left to the arbitrator. The collective bargaining agreements in the cited cases all contained arbitration clauses subjecting "all" or "any" disputes arising out of the applicable collective bargaining agreement or its interpretation to arbitration and provided no relevant limits on the arbitrator's authority. In contrast, this case involves a collective bargaining agreement that unmistakably limits the authority of the arbitrator in discharge grievances to a determination of whether or not the discharge was based upon good cause. In basing his determination of Kirmon's discharge grievance on a finding that the section 2 (a) procedural requirement had not been met (a finding that was patently erroneous), the arbitrator exceeded the authority that the parties to the collective bargaining agreement had specifically granted him in section 4 (a).[4]

In view of our determination that the arbitrator's decision did not take its essence from the collective bargaining agree-

---

**3.** Paradoxically, the arbitrator acknowledged his lack of authority to render a decision on the basis of the Union's refusal to turn over Kirmon's statement to the Company and then proceeded to decide the grievance on that ground.

**4.** The award was thus in direct conflict with an express provision of the collective bargaining agreement and, for that additional reason, cannot be upheld (*see, e.g., In re Marine Pollution Serv., Inc.*, 857 F2d 91, 94 [2d Cir]; *cf., Ghebreselassie v Coleman Sec. Serv.*, 829 F2d 892 [9th Cir] *cert denied sub nom. California Teamsters Pub., Professional & Med. Empls. Union Local 911, Intl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v Ghebreselassie*, 487 US 1234).

ment and that the arbitrator exceeded his express authority in rendering the award, we need not address the Union's additional assertion that the award violated public policy.

Accordingly, the judgment of the Supreme Court, New York County (Edward Lehner, J.), entered November 19, 2001, which denied the petition to vacate an arbitration award, should be reversed, on the law, without costs, the petition granted and the arbitration award vacated.

ANDRIAS, J.P., WALLACH, RUBIN and FRIEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered November 19, 2001, reversed, on the law, without costs, the petition granted and the arbitration award vacated.